IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

GERALD W. SMITH

VS.                                                     CIVIL ACTION NO. 3:07CV55-DAS

MICHAEL J. ASTRUE,
Commissioner of Social Security

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of the claimant, Gerald W. Smith, for supplemental security income benefits under Title XVI. The Court has considered the briefs of the parties, the applicable law, and the administrative record and finds as follows:

## I. FACTUAL AND PROCEDURAL HISTORY

The claimant filed an application for supplemental security income on January 13, 2005, alleging a disability onset date of March 15, 2002. The application was denied initially and upon reconsideration. On December 11, 2006, an administrative law judge ("ALJ") issued a decision unfavorable to the claimant, and on February 23, 2007, the Appeals Council denied the claimant's request for review. The ALJ's decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The claimant was born on December 8, 1954 and was fifty-two years old on the date of the hearing decision. His past relevant work was that of a concrete finisher, dishwasher, and a kitchen worker. With his application for disability benefits, the claimant argued he can no longer work because of back pain and gout. Nevertheless, after consideration of the medical evidence,

1

the subjective testimony at the hearing, and the testimony of a vocational expert, the ALJ found that the claimant was not disabled. The ALJ found the claimant had the residual functional capacity to perform the full range of light work that included the ability to lift and carry twenty pounds occasionally and ten pounds frequently, and stand or walk for two hours in an eight-hour work day, as well as sit for six hours in the same day. The ALJ also found the claimant could occasionally climb, balance, stoop, crouch, kneel, or crawl, with occasional pushing and pulling with his extremities.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, the claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2000).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2000).

of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found . . . where there is a 'conspicuous absence of credible choices' . . . ." *Harrell v. Bowen*, 862 F.2d

---

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2000). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525, 416.925 (1998).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2000).

[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2000).

[8] *Muse*, 925 F.2d at 789.

471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner.  *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475.  If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld.  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III.  ANALYSIS

In the present case, the claimant contends the ALJ committed reversible error, making essentially five arguments: (1) the hypothetical questions posed to the vocational expert failed to incorporate all of the claimant's alleged impairments; (2) the ALJ selectively read the record and largely ignored evidence that would support a finding of disabled; (3) the ALJ did not properly evaluate the claimant's complaints of pain; (4) the ALJ did not give appropriate weight to the opinions and evidence provided by his treating physician; and (5) the ALJ did not consider the claimant's alleged impairments in combination.  The court will address each of these arguments in turn.

### 1.  Hypothetical Questions

With his first argument, the claimant contends that in his hypothetical questions posed to the vocational expert, the ALJ failed to incorporate all of his alleged impairments.  Specifically, the claimant contends the ALJ did not incorporate into any hypothetical question his mental

4

limitations, the effects of his pain, or the effects of his medication.

In the Fifth Circuit, hypothetical questions posed to the vocational expert are sufficient so long as they "incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question . . . ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

With respect to his mental limitations, the claimant points only to what he describes as his "'bridge phobia' . . ., admittedly an eccentric syndrome." While it is true the ALJ did not include bridge phobia in his hypothetical, he did address the issue in his opinion, noting specifically that the claimant had never sought treatment for this alleged disability. Moreover, the ALJ explained that nothing in the record supports any contention that the claimant's bridge phobia limits the claimant's activities of daily living in the slightest.

Next, the claimant contends the ALJ failed to incorporate his allegations of pain in the hypothetical questions posed to the vocational expert. After examining the hypothetical on which the ALJ based his decision, however, the court finds pain incorporated throughout the question posed. For instance, the ALJ described an individual who could lift only twenty pounds occasionally and ten pounds frequently. This same individual also would be unable to stand for no more than two hours at a time during an eight-hour work day. Clearly, the individual in question was limited as described by the ALJ because of the claimant's pain. As the ALJ noted when discussing the claimant's alleged mental impairment, "[a]t the hearing, the claimant testified of being primarily limited due to physical impairments and pain."

Finally, the claimant contends the hypothetical posed impermissibly disregarded the

effects of the medication being taken by the claimant. Specifically, the claimant contends the medication he takes to control his gout causes intense periods of diarrhea, and the pain medication he takes causes "sleepiness/spaciness." As stated *supra*, a hypothetical posed is sufficient if it "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling,* 36 F.3d at 436. It is clear that the ALJ did not consider the relatively mild side-effects of the medication taken to be a disability. As such, the hypothetical posed to the vocational expert was consistent with the ALJ's factual determination that Smith was able to engage in light work, and that these side effects had little effect on his ability to perform work-related activities.

Accordingly, the court finds substantial evidence supports the ALJ's findings with respect to the hypothetical questions posed.

## 2. Selective Reading

Next, the claimant contends the ALJ erred when he failed to scrutinize the record as a whole. Under this heading, the claimant makes essentially three arguments: First, that the ALJ erred when he stated Dr. Rosenkrans's opinion was too restrictive and then relied on a single-contact exam performed by Dr. Lowe; second, that the ALJ erred when he ignored Dr. Rosenkrans's statements concerning the claimant's anxiety and other complaints; and third, that the ALJ erred when he said no tests had been performed when, in fact, Dr. Rosenkrans had taken the claimant's blood and urine during one of his visits.

With his first argument that the ALJ erred when he described Dr. Rosenkrans's opinion as too restrictive, the claimant points specifically to his complaints of gout. The ALJ relied on Dr. Lowe's opinion, which provided that the gout could be "gotten under control." According to the claimant, this ignores fifteen years of efforts to control the gout unsuccessfully, but the

claimant provides no objective evidence save his own testimony that the gout cannot be controlled with medication. In his opinion, the ALJ made it clear that based on the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms, his testimony was not entirely credible. While the claimant refers to Dr. Lowe's opinion as "an educated guess based on two brief exams," there was no objective evidence to refute it. While Dr. Rosenkrans did treat the claimant, he did not treat him for fifteen years prior to this action. Indeed, the claimant did not see Dr. Rosenkrans until approximately three years after the alleged onset date. In addition, the court finds support for the ALJ's determination that the claimant lacked credibility in Dr. Rosenkrans's statement made after one examination that the claimant was "trying for disability, using crutches for walking." Nowhere in the record does it suggest that crutches were ever prescribed by any healthcare provider.

Next, the claimant contends the ALJ erred when he ignored Dr. Rosenkrans's statements concerning the claimant's anxiety and other complaints. Specifically, the claimant points to the ALJ's finding that "[t]he record establishes that there have been no limitations in the claimant's activities of daily living attributable to a mental impairment, no limitations in social functioning, no deficiencies of concentration, persistence or pace and no episodes of decompensation." According to the claimant, "[t]his finding ignores ample evidence of impairments." The claimant then goes on to describe a whole host of alleged impairments, including bridge phobia, dental problems, incontinence, left elbow swelling, gallstones, and the claimant's own graphic description of bowel problems. As courts have explained, the ALJ is not required to cite and discuss each and every symptom or illness claimed by a disability claimant, only to consider the effect of all of his impairments. *See, e.g., Flors v. Massanari*, No. 00-CV-5767-GEL, 2002 WL

100631, at *5 (S.D.N.Y. Jan. 25, 2002). Because the claimant has failed to show that the ALJ did not consider all of these impairments as a whole, the court finds this argument without merit.

Finally, with respect to the claimant's argument that the ALJ failed to read the record as a whole, the claimant points to the ALJ's statement that Dr. Rosenkrans performed no tests on him. In fact, Dr. Rosenkrans did once perform a blood and urine test. The claimant also points out that the ALJ mistakenly stated that Dr. Rosenkrans mentioned his bridge phobia only once when Dr. Rosenkrans actually mentioned it in two separate reports. Even accepting these clearly insignificant oversights, this court cannot see how such minor points had anything whatever to do with the ALJ's final determination. Looking to the objective medical evidence and considering the lack of credibility of the claimant, the ALJ found the claimant could perform light work. Whether his treating physician conducted a blood and urine test, or whether the claimant complained of bridge phobia once or twice to his treating physician does nothing to alleviate the substantial evidence supporting the ALJ's decision.

### 3. Pain

The claimant argues next that the ALJ failed to evaluate properly his complaints of pain. With respect to pain, the ALJ found much of the claimant's testimony lacked credibility. The Fifth Circuit has made it clear that "[w]hile an ALJ must consider an applicant's subjective complaints of pain, he is permitted to examine objective medical evidence in testing the applicant's credibility. He may find, from the medical evidence, that an applicant's complaints of pain are not to be credited or are exaggerated." *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985). Here, the ALJ explained in great detail why the evidence discussed above – Smith's testimony about his daily activities, combined with medical evidence concerning his strength, the

severity of his back and gout problems, and the effectiveness of his medications – undermined the credibility of Smith's contention that his pain was completely debilitating. In addition, as the ALJ noted, even Dr. Rosenkrans stated the claimant was "trying for disability." It does not lend credence to a claimant's cause when his treating physician notes that the claimant is *trying* for disability. It seems one is either disabled or he is not. Dr. Lowe even noted that the claimant used crutches, but he was not sure why because on examination, he had a normal gait pattern. As far back as 1995, the claimant, after explaining he had been working out, playing basketball, and walking, did not want to perform any of the diagnostic tests because he was supposed to be in Daytona. Thus, the court finds the ALJ's credibility determination and his finding that the claimant did not suffer pain sufficient to be found disabled, was supported by substantial evidence.

### 4. Treating Physician

Next, the claimant contends the ALJ erred when he failed to give sufficient weight to the evidence provided by his treating physician, Dr. Raymon Rosenkrans, M.D., a general surgeon in Batesville, Mississippi. While a well-supported and consistent treating physician opinion will often be afforded significant weight, the Commissioner need not give controlling weight to a treating physician's opinion that is not supported by medically acceptable laboratory and diagnostic techniques, or is inconsistent with the other substantial evidence of record. *See* C.F.R. § 404.1527 (d)(2); *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005) (treating physician opinions are not conclusive, and may be rejected for good cause). In addition, the ALJ is not required to assign weight to a physician's conclusion that the claimant is "disabled," because this is an issue reserved for the Commissioner. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir.

2003). It therefore follows that it is the ALJ's responsibility to assess inconsistencies in a physician's opinion.

With this argument, the claimant essentially contends that the records provided by Dr. Rosenkrans show a three-year history of complaints of pain, and apparently, the claimant is arguing that should suffice for a finding of disability. However, as the government points out, Dr. Rosenkrans opined that the claimant could lift no more than ten pounds, but he provided no objective evidence to support his conclusion. The ALJ also noted that Dr. Rosenkrans's notes did not reflect anything more than the claimant's various complaints of pain, medication changes, and refills of prescriptions. According to the ALJ, these records did not include any examination findings to support the assessed limitations. Given the limited bases for his opinions, the ALJ had very little on which to rely from Dr. Rosenkrans.

Accordingly, the Court finds there was substantial evidence to support the ALJ's decision in the present case to look to those portions of Dr. Rosenkrans's opinions that were consistent with other examinations done of the claimant and the claimant's daily activities.

### 5. Impairments in Combination

Finally, the claimant argues the ALJ erred when he failed to consider his impairments in combination. "[I]n making a determination, the ALJ must analyze both the 'disabling effect of each of the claimants' ailments and the 'combined effect of all of these ailments.'" *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987). In the present case, the court finds the ALJ noted specifically in finding no. 3 that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." The court's review of the

record finds also that this was not simply a rote statement. As discussed extensively *supra*, the ALJ examined those impairments the evidence supported and discounted those it did not. The ALJ also discounted portions of the claimant's testimony as lacking in credibility. In the end, however, the ALJ found the claimant capable of light work that included the ability to lift and carry twenty pounds occasionally and ten pounds frequently, and stand or walk for two hours in an eight-hour work day, as well as sit for six hours in the same day. The claimant has provided no argument save a bald assertion nor has he provided any evidence to support his claim that in making his finding the ALJ did not consider every ailment the evidence supported. After examining the record and the ALJ's opinion, the court finds substantial evidence to support the ALJ's opinion, and it is clear the ALJ considered the claimant's impairments singly and in combination.

## IV. CONCLUSION

Based on the foregoing, I find that substantial evidence supports the Commissioner's decision that the claimant was not disabled for purposes of the subject application for supplemental security income benefits. Accordingly, the Commissioner's determination of no disability and the denial of benefits should be affirmed. A final judgment consistent with this opinion will be entered.

THIS, the 17th day of December 2008.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE